UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
JAMES J. BERGEN,

               Plaintiff,

               **MEMORANDUM AND ORDER**
               Case No. 06-CV-3419 (FB)

      -against-

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

             Defendant.
------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*
CHRISTOPHER JAMES BOWES, ESQ.
54 Cobblestone Drive
Shoreham, NY 11786

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: ZACHARY A. CUNHA, ESQ.
Assistant United States Attorney
One Pierrepont Plaza
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

        Plaintiff James J. Bergen ("Bergen") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for further proceedings.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of Social Security.

**I.**

Bergen began working as a New York City Firefighter in 1977. From September 11, 2001, until his retirement on November 17, 2001, he worked in the rescue and recovery efforts at the World Trade Center, where he was exposed to dust, fumes and particulate matter in the area. On June 19, 2004, he applied for DIB, alleging that he had been disabled as of his retirement date due to shortness of breath, tightness of the chest, fatigue, headaches, constant coughing, acid reflux disease and restrictive airway disease.

After his application was denied at the initial and reconsideration stages, he requested a hearing before an administrative law judge ("ALJ"). In a written decision dated November 22, 2005, the ALJ applied the familiar five-step process, *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. §§ 404.1520(b-f)), and found that (1) Bergen had not "engaged in substantial gainful activity since . . . the alleged onset date"; (2) he suffered from severe impairments "due to reactive airway disease and nonInsulin dependent diabetes mellitus," but had "not presented evidence for major depression and/or post traumatic stress disorder . . . and there is no evidence of ongoing psychiatric or other mental health treatment or counseling"; and (3) the impairments did not meet or equal the criteria for any impairment or combination of impairments considered *per se* disabling under the Commissioner's Listing of Impairments. A.R. at 30.[2]

At step four, the ALJ found that, despite his impairments, Bergen retained the residual functional capacity ("RFC") "for medium work activity not involving a dusty

---

[2] "A.R." refers to the administrative record.

or fumy environment," and therefore was "no[ ] longer physically able to perform his . . . past relevant firefighter work." *Id.* at 31. At step five, the ALJ found that Bergen's environmental limitations "reduced the medium occupations and the individual jobs for [him] within the occupations," but that they had "little or no effect on his total occupational base of unskilled medium work"; citing the medical vocational guidelines ("the Grids), 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ concluded that "a finding of not 'disabled' [was] appropriate." *Id.* at 32.

Bergen sought review by the Appeals Council, submitting as new evidence (1) the October 17, 2005 report of examining psychologist Dr. Howard M. Rombom that Bergen was "psychologically not capable of working" due to "depression as a result of the permanent physical disability he sustained while working at the WTC recovery effort," *id.* at 172; (2) the October 17, 2005 report of Bergen's consulting pulmonologist Dr. Shashi Patel that Bergen displayed "symptoms of increasing dyspnea, cough and wheezing and ha[d] hyper reactive airway disease," *id.* at 174; and (3) a January 10, 2006 functional assessment, also by Dr. Patel, that Bergen was able to perform less than a full range of sedentary work, *see id.* at 175-76. On May 19, 2006, the Appeals Council denied Bergen's request for review, concluding that the new evidence "[did] not provide a basis for challenging the [ALJ's] decision." *Id.* at 5. Bergen timely sought judicial review.

II.

Bergen challenges the Commissioner's decision on three grounds. First, he argues that the Appeals Council erred by rejecting new evidence of psychiatric impairment at step two and failing to consider the impact of his alleged psychiatric impairments on the

3

rest of the disability determination process. Second, with respect to the RFC finding of medium work at step four, he argues that the medical evidence establishes that he was limited to sedentary work. Third, with respect to step five, he argues that the ALJ failed to give proper consideration to his environmental limitations and their effect on the range of jobs he could perform. The Court addresses each argument in turn.

### A. Step Two – Psychiatric Impairments

At the time the ALJ issued his decision, the only evidence of psychiatric impairment in the record was the report of Bergen's consulting physician Dr. Michael Hearns, who noted that Dr. Rombom had "diagnosed depression," and concluded, without further explanation, that Bergen suffered from "major depression and Post Traumatic Stress Disorder," *id.* at 169; submitted to the Appeals Council as new evidence, however, was Dr. Rombom's October 17, 2005 report.

> As the Second Circuit has recognized:
>
> Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision. . . . If the new evidence relates to a period before the ALJ's decision, the Appeals Council "shall evaluate the entire record including the new and material evidence submitted ... [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."

*Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (quoting 20 C.F.R. § 404.970(b)). Material evidence, therefore, "submitted to the Appeals Council following the ALJ's decision[,] becomes part of the administrative record for judicial review when the Appeals Council

4

denies review of the ALJ's decision." *Id.* at 45. Since the "regulation was promulgated by the Secretary to provide claimants a final opportunity to submit additional evidence before the Secretary's decision becomes final[,] . . . ignoring [such] new evidence on judicial review would undermine the purpose of the regulation." *Id.*

The Appeals Council, in rejecting Dr. Rombom's report, found that his opinions were "not supported by his objective observations or the narrative portion of his report," and noted that his global assessment of functioning ("GAF") of seventy-five "indicate[d] no more than slight impairment in social, occupational, or school functioning." A.R. at 5. Given the apparent inconsistency between Dr. Rombom's opinions and the relatively high GAF score, the Commissioner should have sought additional information from Dr. Rombom and, if no such information was available, request a consultative evaluation. *See* 20 C.F.R. §§ 404.1512(e) (requiring Commissioner to recontact medical sources if evidence is "inadequate for [him] to determine whether [claimant is] disabled"), 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense."); *cf. Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) ("Because there is nothing to indicate . . . that the reports were inconclusive, the [Commissioner] was not obligated to request further information from the doctors who had ordered the CT and MRIs."). The administrative record does not contain any evidence that the Commissioner did either.

5

Since a proper determination of the claimant's impairments at step two is the foundation from which all remaining steps proceed, *see* 20 C.F.R. § 416.1520(a)(4)(iii) ("At the third step, we also consider the medical severity of your impairment(s)."); *id.* § 416.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," ... when we assess your residual functional capacity [to be applied at steps four and five]."), the Court simply cannot determine whether the ALJ's ultimate decision that Bergen is not disabled was supported by substantial evidence.

**B. Step Four – Residual Functional Capacity**

In support of his RFC finding of medium work, the ALJ relied upon (1) an October 2005 Physical Residual Functional Capacity Assessment signed by "A. Shteyngart, DAII" who opined that Bergen could occasionally lift and/or carry fifty pounds, and frequently lift and/or carry twenty-five pounds, *see* A.R. at 158-65; (2) the opinion of Bergen's treating pulmonologist, Dr. James Bruno, who, according to the ALJ, "indicat[ed] only environmental limitations but no physical or exertional limitations" on his RFC assessment form, *id.* at 31; and (3) the September 28, 2004 examination of the Commissioner's consultative physician Dr. Lamberto Flores, who opined that Bergen's "[s]tatus of employment based on physical examination [was] unlimited, but by symptomatology and disease entity, limited on prolonged walking, standing, climbing stairs and heavy lifting," *id.* at 157.

Only Shteyngart's assessment supports the ALJ's finding of medium work. *See* 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a

6

time with frequent lifting of objects up to 25 pounds."). Shteyngart, however, is a "disability examiner," a state employee tasked with making disability determinations at the initial stage of the administrative process. While the Commissioner allows disability examiners to "assist in completion of the RFC assessment forms," a medical consultant must sign the form "to attest that he/she is responsible for its content, including the findings of fact and discussion of supporting evidence." Social Security Administration, *Programs Operations Manual System* ("POMS") § DI 24510.005, ¶ B.2.b; *see also* 20 C.F.R. § 404.1546(a) ("When a [disability examiner] makes the disability determination, a State agency medical or psychological consultant(s) is responsible for assessing your residual functional capacity."). The record does not reflect that Shteyngart is a qualified medical consultant; indeed, he (or she) crossed out "Medical Consultant's Signature" on the assessment form. Accordingly, the opinion cannot serve as the basis for the ALJ's RFC finding.

Nor does the assessment form completed by Dr. Bruno support that finding. Rather than check the boxes on the form labeled "No Limitation," he simply wrote "N/A" in response to all questions regarding Bergen's "ability to do work-related physical activities." A.R. at 143. It is therefore clear that Dr. Bruno did not intend to offer any opinion about Bergen's exertional limitations.

The opinion of Dr. Flores is ambiguous: Although he acknowledged Bergen's limited ability to perform "heavy lifting," he did not opine as to how that limitation would affect Bergen's exertional capacity. *Id.* at 157. Accordingly, the ALJ should have sought

clarification from Dr. Flores before relying on his opinion as support for an RFC finding of medium work. *See* 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision."). His failure to do so requires remand for clarification.

Given the possibility that Dr. Flores's opinion – once supplemented by additional information – could constitute "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's RFC finding, *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Court cannot conclude, as Bergen contends, that "the record establishes that [ ] Bergen is limited to sedentary work." Pl.'s Mem. of Law at 1.

## C. Step Five – Environmental Limitations

"In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable [Grids]"; the Grids, however, only take into account "the claimant's residual functional capacity in conjunction with the claimant's age, education, and skill level." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation marks and citation omitted). Accordingly, if nonexertional limitations "significantly limit the range of work permitted by his exertional limitations[,] then the Grids obviously will not accurately determine disability status." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform." *Rosa*, 168 F.3d at 78

(quoting *Bapp*, 802 F.2d at 603).

A "significant" nonexertional limitation is one that results in "the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Bapp*, 802 F.2d at 606. To assist ALJs in deciding whether a particular nonexertional limitation or set of limitations is significant, the Commissioner has promulgated the following policy statement:

> In reaching judgments as to the sufficiency of the remaining exertional job base . . . there are three possible situations to consider:
>
> 1. Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in [the Grids] would not be affected.
>
> 2. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base set by the exertional limitations alone, the remaining portion of the job base will guide the decision.
>
> 3. Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a VS [vocational specialist] will be necessary.

SSR 83-14, 1983 WL 31254, at *6 (SSA).

Here, Bergen's treating pulmonologist, Dr. Bruno, opined that he should "refrain from *any* environment containing dust, smoke, or any other particul[ate] matter." *Id.* at 152 (emphasis added). There is no record support for the ALJ's unexplained conclusion that such environmental limitations would not significantly reduce the

9

number of jobs that Bergen could perform, whether at the medium or sedentary level. Indeed, SSR 85-15, 1985 WL 56857 (SSA) suggests the contrary: "Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions." *Id.* at *8. Any doubt in this regard should have been resolved through the testimony of a vocational specialist pursuant to SSR 83-14, not by reliance on the Grids.

## CONCLUSION

The parties' motions for judgment on the pleadings are denied and the case is remanded for further proceedings. On remand, the ALJ shall consider all the evidence in the record, including the reports of Drs. Rombom and Patel submitted as new evidence to the Appeals Council. In particular, the ALJ shall (1) seek clarification from Dr. Rombom regarding the extent of Bergen's psychiatric impairments and, if no such information is available, request a consultative evaluation; (2) seek clarification from Dr. Flores regarding Bergen's exertional limitations if the ALJ chooses, once again, to rely upon that opinion in support of his RFC finding; and (3) if he reaches step five, elicit the testimony of a vocational specialist to determine the effect of Bergen's nonexertional limitations on his exertional job base.

**SO ORDERED.**

/signed/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 31, 2007